Filed 3/11/21; certified for partial publication 4/6/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAREN SILVA et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>HUMBOLDT COUNTY,<br><br>    Defendant and Appellant. | A160161, A160264<br><br>(Humboldt County<br>Super. Ct. No. CV-180425) |

Humboldt County (County) voters approved a measure to tax commercial cultivators of marijuana, and the County's Board of Supervisors (Board of Supervisors or Board) later amended it. A group of challengers, including respondent Karen Silva, sued appellant County to overturn the amendments, and the trial court agreed that the amendments had impermissibly broadened the scope of the tax. On appeal, the County argues that the trial court was procedurally barred from considering the challenge and erred on the merits. We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

The Board of Supervisors placed on the November 2016 ballot Measure S, a proposed tax on commercial cultivators of marijuana. The measure passed, and the Commercial Marijuana Cultivation Tax became

1

operative on January 1, 2017. (Humboldt Co. Finance, Revenue and Taxation Code, § 719-15, hereafter Finance Code.)

Measure S allows the Board of Supervisors to amend the law or approve enforcement regulations promulgated by the County's administrative officer so long as the action "does not result in an increase in the amount of the tax or broaden the scope of the tax." (Finance Code, § 719-9.) The Board of Supervisors amended Measure S on June 6, 2017, and again on April 3, 2018, and these amendments are the subject of this litigation.

Respondent Silva owns property in Humboldt County. No one cultivated cannabis on the property in 2017. The County nonetheless sent her an invoice of $40,000 in commercial cannabis cultivation taxes under Measure S for the year 2017–2018. Silva paid the invoice. The County sent an invoice of $54,025 for the year 2018–2019, and Silva again paid the invoice.

In May 2018, three unincorporated associations filed a combined petition for writ of mandate and a complaint for injunctive and declaratory relief.[1] Silva was added as a petitioner/plaintiff in a first amended petition/complaint. The parties later stipulated that Silva had standing to assert the claims alleged against the County.

The parties ultimately asked the trial court to resolve five issues relating to the amendments, three of which are at issue in this appeal.

The first of these issues was whether the amendments impermissibly broadened the scope of the tax by extending its reach from cultivators to property owners. As originally adopted, Measure S provided that "each

---

[1] The original petitioners/plaintiffs were HUMMAP, the Humboldt Cannabis Taxpayers' Association, and the Humboldt Voters' Association. All three associations later stipulated to dismissal from the action without prejudice.

*person engaged in legally authorized commercial marijuana cultivation* within the unincorporated area of Humboldt County shall pay an annual tax of $1 per square foot of outdoor cultivation area, $2 per square foot of mixed-light cultivation area or $3 per square foot of indoor cultivation area." (Italics added.) The amendments provided that "each *property owner* whose property is subject to a commercial marijuana cultivation permit shall pay an annual tax of $1 per square foot of outdoor cultivation area, $2 per square foot of mixed-light cultivation area or $3 per square foot of indoor cultivation area *regardless of whether or not marijuana is actually grown on such property*." (Italics added.)

The second issue was whether the amendments impermissibly broadened the scope of the tax by expanding the taxable property from areas actually "cultivated" to all areas "permitted" for cultivation. As passed by voters, Measure S defined "cultivation area" as "the sum of the permitted area(s) of marijuana cultivation as measured around the perimeter of each discrete area of marijuana cultivation on a single premises, as defined herein. Area of marijuana cultivation is the physical space where marijuana is grown and includes, without limitation, garden beds or plots, the exterior dimensions of hoop houses or green houses, and the total area of each of the pots and bags containing marijuana plants on the premises." The amendments changed the definition of "cultivation area" to mean "the cultivation area stated on the commercial marijuana cultivation permit issued by the Humboldt County Planning and Building Department."

The third issue was whether the amendments expanded the scope of the tax by changing the time when the taxes start to accrue. Under Measure S, taxes were to "begin to accrue on the date on which a person becomes engaged in legally authorized commercial marijuana cultivation in accordance with the applicable provisions of this Code and all other

3

applicable state and federal laws and regulations." The amendments removed this sentence and replaced it with one stating, "For purposes of this Chapter, taxes shall be owed for each and every year in which a commercial marijuana cultivation permit is issued by the Humboldt County Planning and Building Department."

Following briefing and a hearing, the trial court ruled in Silva's favor on all three issues.[2]  Thus, it found that the amendments impermissibly increased the scope of the tax by expanding its application from those engaged in cultivation to all property owners subject to a cultivation permit, by expanding the taxable areas from those under cultivation to the entire area covered by the permit, and by expanding its application to people who have obtained a permit but may not have started to cultivate marijuana under that permit.

The trial court issued a peremptory writ of mandate and concluded that the other causes of action were moot, and the County appealed from both the writ and the judgment.  The appeals were assigned two different appeal numbers, and this court consolidated the appeals on the County's request.

After the County appealed, the Board of Supervisors in October 2020 again amended Measure S to change the definition of who is subject to the tax (October 2020 amendments).  As a result of these further amendments,

---

[2] The court ruled in favor of the County on two other issues.  Measure S provided that the tax would be collected "*biennially* in the same manner as other taxes fixed and collected by the County of Humboldt" (italics added), and the measure was amended to provide that the tax shall be collected "in the same or similar manner as other taxes fixed and collected by the County of Humboldt."  The court concluded that removing the confusing word "biennially" was akin to correcting a scrivener's error and did not impermissibly alter the timing of the collection of the tax.  The trial court further concluded that the amendments did not impermissibly expand the scope of the tax by taxing those who were not complying with federal law. Because Silva did not file a cross-appeal, these issues are not before us.

4

the tax now applies to "each person issued a commercial marijuana cultivation permit."

II.
DISCUSSION

A. *The Trial Court Was Not Procedurally Barred From Considering the Challenge to the Board's Amendments.*

For the first time on appeal, the County raises several procedural arguments, none of which persuade us.

    1. The Doctrine of Exhaustion of Administrative Remedies Does Not Apply.

The County first contends that this action is barred because Silva failed to exhaust her administrative remedies, a question we review de novo. (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380 (*Plantier*).) Even assuming the County did not forfeit the issue by failing to raise it below and by stipulating to Silva's standing, we conclude the contention lacks merit.

Parties must exhaust any available administrative remedies before resorting to the courts. (*Plantier*, *supra*, 7 Cal.5th at pp. 382−383.) This exhaustion requirement applies " 'where a claim is cognizable in the first instance by an administrative agency alone' " and " 'judicial interference is withheld until the administrative process has run its course.' " (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390, quoting *United States Western Pacific Railroad Co.* (1956) 352 U.S. 59, 63.) " 'Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." ' " (*Plantier*, at p. 382.) "The doctrine favors administrative autonomy by allowing an agency to reach a final decision without interference from the courts." (*Id.* at p. 383.) The requirement that administrative remedies be exhausted is jurisdictional in California and not a matter of judicial discretion. (*Hill RHF Housing*

5

*Partners, L.P. v. City of Los Angeles* (2020) 51 Cal.App.5th 621, 631, review granted Sept. 16, 2020, S263734 (*Hill RHF*).)

The County first contends that "[b]efore suing, one opposing a tax must present her objections at the public hearing called for that purpose — this is named 'issue exhaustion.' " (E.g., *Hill RHF*, *supra*, 51 Cal.App.5th at pp. 632–634.) In *Hill RHF*, for example, property owners challenged the establishment of multiple business improvement districts created to levy assessments on real property in those districts. (*Id.* at pp. 626–627.) The establishment of such districts is governed by "a comprehensive procedure cities must follow." (*Id.* at p. 627, citing Sts. & Hy. Code, § 36600 et seq.; Cal. Const., art. XIII D.) The procedure "include[d] opportunities for property owners in proposed assessment districts to state their objections to proposed assessments, and a requirement that those objections be considered before levying an assessment." (*Hill RHF*, *supra*, 51 Cal.App.5th at p. 627.) The petitioners were served with written notice of the hearings where they could "create a record of the reasons for their objection." (*Hill RHF*, *supra*, 51 Cal.App.5th at pp. 627, 629; Cal. Const., art. XIII D, § 4, subd. (c).) Because the petitioners had not availed themselves of the legally proscribed "comprehensive protest and hearing process," the court concluded that they had not exhausted their administrative remedies. (*Hill RHF*, at p. 632.)

Here, by contrast, the County identifies no such legal process where Silva was required to create a record of her objections to the County's amendments to Measure S. The County argues that challengers "were required to present their objections — identifying the issues they would litigate — during at least one of the Supervisors' hearings on" their amendments. But *Plantier* makes clear that parties are not required to exhaust an "inadequate" remedy, and a remedy is inadequate "unless it 'establishes clearly defined machinery for the submission, evaluation and

6

resolution of complaints by aggrieved parties.'" (*Plantier*, *supra*, 7 Cal.5th at p. 384.) It may be true, as the County claims, that the Board of Supervisors "could have addressed the Challengers' objections before it proposed Measure S." The challengers, however, oppose the *amendments* to the measure. And while the Board of Supervisors may have held hearings on the proposed amendments, there is no indication that at these hearings the Board was required to evaluate or resolve complaints by aggrieved parties.

The County further contends that the challengers failed to exhaust remedies under the refund procedures of the Revenue and Taxation Code. True enough, "[a] taxpayer ordinarily must pay a tax before commencing a court action to challenge the collection of the tax," a rule "commonly known as 'pay first, litigate later.'" (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1116.) But Silva *did* pay the tax she challenges. And while it is certainly true that a taxpayer is required to seek a refund from a county assessment appeals board when seeking an assessment reduction or rebate (*Williams & Fickett v. County of Fresno* (2017) 2 Cal.5th 1258, 1264–1265), here Silva challenged the underlying legal basis for assessing a tax against her, not the amount of the assessment.

The County's exhaustion argument fails.

### 2. The County Waived Other Procedural Arguments by Stipulating in the Trial Court that Silva Had Standing.

The County waived its remaining procedural arguments by stipulating in the trial court that Silva had standing and asking for the trial court to rule on issues. "The doctrine of waiver ordinarily prevents a party from arguing for the first time on appeal questions that were not presented to the trial court. [Citations.] The doctrine of invited error prevents a party from asserting an alleged error as grounds for reversal when the party through its own conduct induced the commission of the error. [Citations.] Related to

7

these doctrines is the doctrine of theory of trial:  'Where the parties try the case on the assumption that a cause of action is stated, that certain issues are raised by the pleadings, that a particular issue is controlling, or that other steps affecting the course of the trial are correct, neither party can change this theory for purposes of review on appeal.' "  (*County of Los Angeles* v. *Southern Cal. Edison Co.*, *supra*, 112 Cal.App.4th at p. 1118 [where a county asked trial court to evaluate documentary-transfer tax, it forfeited argument that "pay first, litigate later" rule applied to taxpayer's challenge].)

The County waived its argument that two issues—whether the amendments enacted by the Board of Supervisors changed (1) the definition of "cultivation area" and (2) the time when taxes accrue—are not ripe for review.  This argument was waived when the County stipulated that the trial court should decide those issues.

### B.  *The County's Amendments Impermissibly Expanded the Scope of Measure S.*

The County contends that the Board's amendments did not impermissibly alter Measure S but instead merely clarified some of the measure's ambiguous terms.  We disagree.

#### 1.  Applicable Law.

Legislation "enacted by voter initiative may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval."  (*People v. Cooper* (2002) 27 Cal.4th 38, 44.)  "An amendment is a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision."  (*Ibid.*)  "[I]n deciding whether a particular legislative act amends an initiative statute, courts 'need to ask whether it prohibits what the initiative authorizes, or authorizes what the initiative prohibits.'  [Citations.]

8

The resolution of this question requires a determination of what the electorate contemplated when it passed the initiative, which in turn is a matter of statutory interpretation." (*People v. Lopez* (2020) 51 Cal.App.5th 589, 597.)

" 'When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure.' " (*People v. Lopez, supra,* 51 Cal.App.5th at p. 597.) Although the County contends that Measure S was not technically an initiative, the parties apparently do not disagree this is how the court should analyze the amendments to Measure S.

The County contends that this court should defer to its construction of its own legislation, but it relies on inapposite authority that does not involve amending measures approved by voters. (*San Francisco Fire Fighters Local 798 v. City and County of San Francisco* (2006) 38 Cal.4th 653, 667 [deference to rules adopted by civil service commission]; *California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 204, 211–213 [deference to Industrial Welfare Commission order fixing hours, wages, and conditions of employment].)

2. The County Expanded Who Is Taxed.

As we have said, the trial court first concluded that the Board of Supervisors impermissibly broadened the scope of Measure S by taxing

9

"property owner[s] whose property is subject to a commercial marijuana cultivation permit," instead of taxing only those "person[s] engaged in commercial marijuana cultivation," as Measure S originally provided. After the County appealed, the Board of Supervisors enacted the October 2020 amendments so that the tax now applies to "person[s] issued a commercial marijuana cultivation permit."

The County argues that the October 2020 amendments rendered moot the "dispute regarding taxing property owners as such." True, "repeal or modification of a statute under attack, or subsequent legislation correcting a challenged deficiency, can render a case moot." (*Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222.) But "[t]he appeal may not be moot if the amendment includes, continues, or reenacts a material part of the enactment which was considered by the lower court." (*Alternatives for California Women, Inc. v. County of Contra Costa* (1983) 145 Cal.App.3d 436, 445.)

Although the October 2020 amendments establish that property owners are not subject to the tax simply by nature of their status as owners, the amendments still broaden the scope of Measure S as passed by the voters. The version passed by the voters made the tax applicable only to "person[s] engaged in commercial marijuana cultivation," whereas the current version makes the tax applicable to "person[s] issued a commercial marijuana cultivation permit," whether or not they are engaged in actual cultivation, an issue we address below (§ II.B.4.).

We agree with the trial court that "[t]he voters approved a measure whereby an individual involved in cultivation is the person responsible for the tax. While it may often be true that the property owner and cultivator are the same individual, such is not always the case." We construe the County's mootness argument as an abandonment of its argument that the

10

Board was authorized to broaden the tax by applying it to all property owners.

### 3. The County Expanded What Is Taxed.

Although the October 2020 amendments clarified that only permit holders are subject to the tax, the Board of Supervisors did not alter the prior amendments' change in the taxable area from the "permitted area(s) of marijuana cultivation as measured around the perimeter of each discrete area of marijuana cultivation" to "the cultivation area stated on the commercial marijuana cultivation permit."

On appeal, the County contends that the change in the taxable cultivation area was permissible because the original version of the measure was ambiguous. We disagree. The original Measure S passed by the voters defined "cultivation area" as "the sum of the permitted area(s) of marijuana cultivation as measured around the perimeter of each discrete area of marijuana cultivation on a single premises, as defined herein. Area of marijuana cultivation is the physical space where marijuana is grown and includes, without limitation, garden beds or plots, the exterior dimensions of hoop houses or green houses, and the total area of each of the pots and bags containing marijuana plants on the premises." The County claims it is unclear whether this meant "the area in which growing is permitted, whether or not cultivated" or "the area that is both permitted and cultivated." We discern no such ambiguity. The original definition explained in some detail how to measure the area (or areas) where actual cultivation was taking place. As the trial court stated, the definition "cannot be the full permitted area in and of itself, because the very language of the Measure passed by voters limits it to the sum of the areas around the perimeter of the physical spaces where marijuana is actually being cultivated." The County's amended definition of "cultivation area" to mean "the cultivation area stated on the

11

commercial marijuana cultivation permit issued by the Humboldt County Planning and Building Department" changes the scope of what is taxed.

The County argues that it was necessary to amend Measure S to "clarify" that the tax applies to "the cultivation area stated on the commercial marijuana cultivation permit . . . regardless of whether or not marijuana is actually grown on such property" to "allow[] efficient administration of the tax and [to] prevent[] fraud by cultivators who underreport the area of their grows." The County further claims that "[s]uch fraud would be difficult to prevent in a sprawling, rural and forested county like Humboldt." But regardless of whether they promote administrative and enforcement efficiencies, the amendments impermissibly "broaden the scope of the tax" and are therefore barred because they were not approved by the electorate.

Because we find no ambiguity in the measure's original wording, we need not consider the County's arguments that extrinsic evidence supports its arguments.

4. The County Changed When the Tax Accrues.

We likewise find no ambiguity in the measure's language governing the time that the marijuana tax begins to accrue. Measure S as passed provided that "taxes shall begin to accrue on the date on which a person becomes engaged in legally authorized commercial marijuana cultivation in accordance with the applicable provisions of this Code and all other applicable state and federal laws and regulations." The County argues that this language was ambiguous because the tax "could accrue when a permit is obtained or when a cultivator begins to grow," but we disagree. True enough, the measure referred to cultivation "in accordance with the applicable provisions of this Code," which arguably encompasses securing the necessary permit before starting to cultivate. But this does not mean, as the County

12

argues, that Measure S can be reasonably interpreted to say that the tax accrues as soon as someone secures a permit.

We also disagree with the County that the definition of "[c]ommercial marijuana cultivation" supports its reading of Measure S. Again, "marijuana cultivation" is defined as "any activity involving the planting, growing, harvesting, drying, curing, grading or trimming of marijuana or cannabis, including nurseries, that is intended to be transported, processed, manufactured, distributed, dispensed, delivered or sold in accordance with the applicable provisions of this Code and all other applicable state and federal laws and regulations." The County argues that the phrase "any activity involving" is "easily read to include obtaining the permit that [the] Code requires." Not so. The definition focuses on the process of actually cultivating marijuana, not seeking a permit to do so.

As the trial court observed, "A person obtaining a permit is reserving the right to cultivate and abide by certain rules and regulations; it does not obligate them to actually engage in cultivation. . . . The tax was supposed to begin accruing when cultivation starts, rather than when a permit is issued." We agree with the trial court that "[t]he tax was supposed to begin accruing when cultivation starts, rather than when a permit is issued," and the County thus was not permitted to amend the measure so that taxes would be owed for each and every year someone has a permit, regardless of whether they are cultivating marijuana.

### III.
#### DISPOSITION

The judgment is affirmed. Respondents shall recover the costs of appeal.

13

_____

Humes, P.J.


WE CONCUR:



_____

Margulies, J.



_____

Banke, J.


*Silva v. Humboldt County*  A160161/A160264

Filed 4/6/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAREN SILVA et al.,<br><br>     Plaintiffs and<br>Respondents,<br><br>v.<br><br>HUMBOLDT COUNTY,<br><br>     Defendant and<br>Appellant. | A160161, A160264<br><br>(Humboldt County<br>Super. Ct. No. CV-180425)<br><br>ORDER CERTIFYING<br>OPINION FOR PARTIAL<br>PUBLICATION |

BY THE COURT:

The opinion in the above-entitled matter filed on March 11, 2021, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, it is ordered that the opinion should be published in the Official Reports, with the exception of section II.A, which does not meet the standards under rule 8.1105(c). Dated:

_____
Humes, P.J.

Trial Court:

Superior Court of the County of Humboldt

Trial Judge:

Hon. Kelley L. Neel

Counsel for Defendant and Appellant:

Michael G. Colantuono, John L. Jones II, Matthew C. Slentz, Colantuono, Highsmith & Whatley, PC

Counsel for Plaintiff and Respondent:

Richard Jay Moller, So'Hum Law Center of Richard Jay Moller

Eugene Denson, The Law Office of Eugene Denson

*Silva v. Humboldt County*  A160161/A160264