Filed 5/28/21

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KCSFV I, LLC, et al., | C088824 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201700216260CUWMGDS) |
| v. | |
| FLORIN COUNTY WATER DISTRICT et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

Kronick, Moskvitz, Tiedmann & Girard, William T. Chisum and Jeffrey A. Mitchell for Defendants and Appellants.

Lewis Brisbois Bisgaard & Smith and Christopher R. Rodriguez and Andrew D. Bluth, for Plaintiffs and Respondents.

_____

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

1

Florin County Water District (district), its board of directors (board), and its general manager (collectively defendants)[1] appeal from the trial court's judgment setting aside the district's December 2016 water rate increase for violating Proposition 218 (known as the Right to Vote on Taxes Act), as requested by KCSFV I, LLC and KCSFV II, LLC (collectively plaintiffs)[2] in their verified petition for writ of mandate and complaint for declaratory and injunctive relief (petition). Defendants assert the rate increase complied with the procedural and substantive requirements of Proposition 218, and the trial court erred in rejecting their affirmative defenses under Government Code section 66022 and the exhaustion of administrative remedies doctrine. Defendants further challenge the trial court's judgment awarding plaintiffs their attorney fees pursuant to Code of Civil Procedure section 1021.5.

In the published portion of the opinion, we reject defendants' arguments pertaining to the validity of the water rate increase. We further reject defendants' challenge to the attorney fees decision in the unpublished portion of the opinion. Accordingly, we affirm.

LEGAL BACKGROUND

Proposition 218, approved by voters in 1996, added articles XIII C and XIII D to the California Constitution[3] and "is one of a series of voter initiatives restricting the ability of state and local governments to impose taxes and fees." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380, 381 (*Plantier*).) "Article XIII C

---

[1] The district, its board, and its general manager were respondents and defendants in the underlying action. We collectively refer to them as defendants rather than respondents to avoid confusion as to their appellant status on appeal.

[2] KCSFV I, LLC and KCSFV II, LLC were petitioners and plaintiffs in the underlying action. We collectively refer to them as plaintiffs to correspond to our use of defendants, as discussed in footnote 1.

[3] All further article and section references are to the California Constitution unless otherwise specified.

2

concerns voter approval for many types of local taxes other than property taxes. Article XIII D addresses property-based taxes and fees." (*Id.* at p. 381.) This appeal pertains to a water rate increase adopted under article XIII D.

"Article XIII D imposes distinct procedural and substantive limitations. [Citation.] The procedures an agency must follow before 'imposing or increasing any fee or charge' are found in subdivision (a) of article XIII D, section 6. An agency seeking to impose or increase a property-related fee must hold a hearing and send written notice of the hearing to the owner of each affected parcel. [Citation.] The notice must specify the amount of the proposed fee, the basis of calculation, and the reason for the fee. It must note the date, time, and location of the public hearing. [Citation.] At that hearing, 'the agency shall consider all protests against the proposed fee or charge.' [Citation.] In addition to mandating that the agency 'consider' all protests, Proposition 218 establishes a majority protest remedy. 'If written protests against the proposed fee or charge are presented by a majority of owners of the identified parcels, the agency shall not impose the fee or charge.' [Citation.] Article XIII D does not define the term 'protest' or explain what form a written protest must take." (*Plantier*, *supra*, 7 Cal.5th at pp. 381-382, fns. and italics omitted.)

"Even when an agency is generally authorized to impose or modify fees, so long as it complies with the notice and hearing requirements, Proposition 218 places other substantive limitations on the agency. Those substantive limitations on property-related fees appear in subdivision (b) of article XIII D, section 6. Under these limitations: (1) revenues derived from the fee may not exceed the cost of providing the property-related service [citation]; (2) those revenues may not be used for any purpose other than the one for which the fee was imposed [citation]; (3) the amount of the fee 'shall not exceed the proportional cost of the service attributable to the parcel' [citation]; (4) a fee may not be imposed for a service unless that service is available to the property owner [citation]; and (5) a fee may not be imposed upon property owners for a general

3

governmental service, like fire protection, if the service is available to the general public in substantially the same manner as it is to property owners [citation]." (*Plantier*, *supra*, 7 Cal.5th at p. 382, italics omitted.)

"The notice and hearing requirements of subdivision (a) of section 6 of California Constitution article XIII D [are intended to] facilitate communications between a public water agency's board and its customers, and the substantive restrictions on property-related charges in subdivision (b) of the same section should allay customers' concerns that the agency's water delivery charges are excessive." (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 220-221.)

After an agency adopts a property-related fee increase subject to Proposition 218, as here, ratepayers can challenge the quasi-legislative act by filing a petition for writ of mandate. Such litigation differs in two crucial respects from typical mandamus proceedings challenging an agency's action. First, article XIII D places the burden of proving compliance with the article on the agency, rather than on the person challenging the agency's action, as in a typical mandamus proceeding. (Art. XIII D, § 6, subd. (b)(5).) Second, unlike in a typical mandamus proceeding -- in which the trial court applies a deferential standard of review to the agency's action -- the trial court exercises its independent judgment in determining whether a fee increase is consistent with article XIII D. (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 437.) On appeal, we also apply our independent judgment to the agency's action, deferring to neither the agency nor the trial court. (*Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 912.)

FACTUAL AND PROCEDURAL BACKGROUND

I

*The District's Adoption Of The Rate Increase*

The following facts were taken from the administrative record and the trial court's unchallenged findings in its final statement of decision.

A

*The Notice*

On October 6, 2016, the district prepared a document titled "Florin County Water District Notice of Proposed Increases to Monthly Water Rates" (notice), stating: "Florin County Water District, the 'District', proposes to increase its monthly water rates for all users. The new rates would be phased in over a period of 3 ½ years as follows:

"Example: Current 1" Residential @ $20.00 per month. [¶] January 1st 2017 - $30.00 per month[;] [¶] July 1st 2017 - $40.00 per month[;] [¶] July 1st 2018 - $50.00 per month[;] [¶] July 1st 2019 - $60.00 per month[.] [¶] All other classifications would increase by an equal percentage.

"The rate increases are being proposed in order to provide sufficient revenue to pay for the increasing costs of maintenance and operation of the District's water system, also to provide funding for physical plant and distribution system replacement. The proposed rates for each classification of property are determined by the cost of providing water service to customers in that classification based upon the water use characteristics of such property.

"The governing board will hold a public hearing on the proposed rate increases on December 12, 2016 at 7 p.m., or as soon thereafter as the matter may be heard, in the District's Office located at 7090 McComber Street, Sacramento, CA 95828."

The notice further provided property owners and tenants could, subject to certain requirements, file written protests against the proposed water rate increase at or before the public hearing and, "[i]f written protests against the proposed increases are received from the property owners or tenants of a majority of the affected properties, the rates will not be increased."

B

*The Hearing*

The district held a public hearing on the proposed rate increase on December 12, 2016. Prior to the hearing, the district received over 150 written protest letters.

"As part of the December 12, 2016 public hearing, the District's Board of Directors considered a summary chart comparing the impact of potentially increasing rates by 25%, 37.5% and 50% over the course of the next four years." The chart sets forth four tables, each with four columns, as follows (formatting, type face, and bold modified):

| 2016-2017 | $5.00=25% per month | $7.50=37.5% per month | $10.00=50% per month |
|---|---|---|---|
| REVENUE | 1,449,730 | 1,771,895 | 1,932,975 |
| EXPENSE | 1,378,465 | 1,378,465 | 1,378,465 |
| CAPITAL EXPENSE | 393,690 | 393,690 | 393,690 |
| TOTAL EXPENSE | 1,772,155 | 1,772,155 | 1,772,155 |
| NET | (322,485)[4] | (260) | 160,820 |

| 2017-2018 | $5.00=25% per month | $7.50=37.5% per month | $10.00=50% per month |
|---|---|---|---|
| REVENUE | 1,771,895 | 2,255,140 | 2,577,300 |
| EXPENSE | 1,530,095 | 1,530,095 | 1,530,095 |
| CAPITAL EXPENSE | 437,000 | 437,000 | 437,000 |
| TOTAL EXPENSE | 1,967,095 | 1,967,095 | 1,967,095 |
| NET | (195,200) | 288,045 | 610,205 |

---

**4**     This total should be (322,425) based on the revenue and expense figures presented, not (322,485).

| 2018-2019 | $5.00=25% per month | $7.50=37.5% per month | $10.00=50% per month |
|---|---|---|---|
| REVENUE | 2,094,060 | 2,738,385 | 3,221,625 |
| EXPENSE | 1,713,710 | 1,713,710 | 1,713,710 |
| CAPITAL EXPENSE | 489,440 | 489,440 | 489,440 |
| TOTAL EXPENSE | 2,203,150 | 2,203,150 | 2,203,150 |
| NET | (109,090) | 535,235 | 1,018,475 |

| 2019-2020 | $5.00=25% per month | $7.50=37.5% per month | $10.00=50% per month |
|---|---|---|---|
| REVENUE | 2,416,225 | 3,221,630 | 3,865,950 |
| EXPENSE | 1,936,490 | 1,936,490 | 1,936,490 |
| CAPITAL EXPENSE | 553,070 | 553,070 | 553,070 |
| TOTAL EXPENSE | 2,489,560 | 2,489,560 | 2,489,560 |
| NET | (73,335) | 732,070 | 1,376,390 |

The following handwritten note is located below the chart: "5 YEAR INFLATION." "The Board of Directors voted to approve the 50% per month increase."

## II

### *The Litigation*

#### A

### *The Petition*

Plaintiffs filed the petition challenging the district's rate increase for noncompliance with section 6, subdivisions (a) and (b), of article XIII D.[5]  Plaintiffs operate a 256-unit residential apartment complex within the district's boundaries.

Plaintiffs alleged they did not receive the notice and were unaware the district was considering a rate increase at the December 2016 meeting.  Plaintiffs purportedly first learned of the rate increase when they received their January 2017 water bill, indicating their bi-monthly water rate had increased from $10,446 to $15,624.

Plaintiffs sought an order commanding defendants to set aside the water rate increase decision, an award of damages, a judicial declaration that the decision was unlawful and invalid, an injunction precluding defendants from collecting the water rate increases, an award of attorney fees under Code of Civil Procedure section 1021.5, and any other relief deemed appropriate by the court.

#### B

### *The Statement Of Decision*

The trial court entered judgment in favor of plaintiffs, finding and stating in its statement of decision that defendants had failed to satisfy their burden of demonstrating the rate increase complied with the substantive requirements of section 6, subdivision (b)(1), and that any of the affirmative defenses applied.

The trial court explained:  "[Defendants] argue that the 50% increase allows the District to 'essentially break even upon adoption of the new fees, and in future years it

---

[5]     All further references to section 6 are to article XIII D.

8

would allow for the rebuilding of the District's reserves.' [Citation.] [Defendants] further argue that the District should be allowed to collect fees to prepare for inflation, and that to be prudent, it needed to build funds to 'help insure future operations by replacing infrastructure as necessary.' [Citation.] [Defendants] close their argument with, 'the District opted to increase rates to allow for the building of meaningful reserves.' [Citation.]

"[Defendants] do not cite to *any* authority for the proposition that Article XIII D, section 6, subdivision (b)(1) permits the District to charge amounts resulting in net revenue designated for 'rebuilding of the District's reserves.' The plain language of the provision clearly contradicts this argument. The requirement that the revenues shall 'not exceed the funds required to provide the property related service' directs an agency to calculate the amounts necessary to provide the subject services, in this case, water services. While conceivably, this requirement could permit charges for operating costs and potentially, for certain capital improvement expenses, it certainly does not allow the District simply to build up net reserves or otherwise create generalized net revenue from a rate increase as the District appears to be doing here. Notably, in the present circumstances, this 'Net' revenue is substantial. The administrative record indicates that by the 2019-2020 cycle, as a result of the 50% rate increase that it approved, the District, after having fully paid its projected 'Total Expense,' will enjoy a 'Net' revenue as much as $1,376,390. [Citation.] The Court finds that Article XIII D, section 6, subdivision (b)(1) allows no such result." (Fn. omitted.)

In the accompanying footnote, the trial court noted the chart considered at the December 2016 meeting "includes a handwritten note at the bottom that stated '5 Year Inflation.' However, there is no explanation as to who wrote this note, what it means, the basis for any assertion it may arguably make, or any other foundation to support an assertion that the 'Net' (or any other category identified on the chart) accurately accounts for inflation that will occur during the multiple years of the rate increase. [Defendants]

9

cite only generally to [pages in the administrative record], which are a series of documents concerning cost of living, minimum wage, and gross national product. Absent is any explanation as to how these documents purportedly support a finding that the 'Net' is an accurate representation of 'funds required to provide the property related service.' "

As to defendants' exhaustion of administrative remedies affirmative defense, the trial court ruled: "The Court has reviewed the protest letters included in the administrative record, which the parties acknowledge were received by the District prior to the vote approving the subject rate increase. Pursuant to the meeting minutes, 'Manager Beal presented the Board with 98 independent letters and 65 form letters from one association of opposition of [*sic*] rate hike. There were also 14 constituents in attendance.' [Citation.] The Court finds that many of the opposition letters raise the complaint that the rate increase is excessive -- the same claim that P[laintiffs] raise now. [Citations.] The Court finds that the District was presented with arguments that the subject rate increase was improper, including arguments that the amount proposed was beyond the amount appropriate for the services provided. Further, the Court finds it unnecessary for the opposition letters to articulate the same specific legal arguments eventually set forth by P[laintiffs] with the subsequent assistance of their counsel.

"Where, as here, the District approved the rate increase regardless of over 150 letters in opposition, many of which make the same complaint as P[laintiffs do] now, the Court finds [defendants'] argument that P[laintiffs] failed to exhaust their administrative remedies to be unavailing. Therefore, to the extent that Proposition 218 requires administrative exhaustion the Court finds that it would have been futile because the argument P[laintiffs] make now was already placed before the District by other protesting water users. As [defendants] argue, the purpose of exhaustion is to permit the challenger to raise 'alleged defects at the administrative level at which time the agency would have had the chance to address the perceived problems and formulate a resolution.' [Citation.] In sum, because water users had raised challenges to the excessive amount of the rate

10

increase as part of the administrative process, the record supports the Court's finding that P[laintiffs]' protests would have been futile, and the purpose of administrative exhaustion was otherwise fulfilled." (Fn. omitted.)

The trial court further considered defendants' Government Code section 66022 affirmative defenses, finding the statute inapplicable under the facts of this case. Specifically, the trial court found defendants failed to carry their burden of proving the rate increase qualifies as a capacity charge under Government Code section 66013, subdivision (b)(3), a fee under Government Code section 66013, subdivision (b)(5), or a service charge under Government Code section 66022, subdivision (c).

The trial court did not consider or rule on plaintiffs' arguments that the district had violated the procedural requirements under section 6, subdivision (a). The trial court entered judgment in favor of plaintiffs on November 26, 2018, allowing any claims for an award of attorney fees and/or costs to be filed postjudgment. The notice of appeal was timely filed.

C

*Attorney Fees*

Plaintiffs filed a motion for attorney fees pursuant to Code of Civil Procedure section 1021.5. The trial court granted the motion and awarded plaintiffs $66,345.50 in attorney fees. For the reader's ease, we discuss the trial court's decision on the motion for attorney fees *post* in the pertinent portion of the Discussion.

DISCUSSION

I

*The District Failed To Comply With Section 6's Substantive Requirement*

Defendants argue the trial court erred in finding the rate increase violated the substantive requirements of the California Constitution because the trial court applied a narrow rather than broad construction of section 6, subdivision (b)(1) when it determined the district could not charge amounts designated for rebuilding its reserves. They further

11

assert the rate increase complied with the substantive requirements for the following reasons: (1) "[a]s a County Water District, the District has limited powers as prescribed by the Water Code" and it "can only use such fees for the water-related powers given to it by the Legislature"; (2) "[t]he record contains no indication that revenues collected by the District have been used for other than its statutory purpose"; (3) the district reasonably allocated its costs in determining the rate increase because the notice "expressly advised" the rates for each property classification were "determined by the cost of providing water service to the customers in that classification, based upon the water use characteristics of such property"; (4) the water service is immediately available to the district's customers; and (5) the district does not provide general government services. We conclude defendants failed to meet their burden of demonstrating the rate increase complied with section 6's substantive requirement.

We generally agree with defendants' first argument that reserves *may* appropriately be included as a component of a property-related fee. As this court previously explained: "The theme of [section 6] is that fee or charge revenues may not exceed what it costs to provide fee or charge services. Of course, what it costs to provide such services includes all the required costs of providing service, short-term and long-term, including operation, maintenance, financial, and capital expenditures. The key is that the revenues derived from the fee or charge are required to provide the service, and may be used only for the service. In short, the section 6(b) fee or charge must reasonably represent the cost of providing service." (*Howard Jarvis Taxpayers Assn. v. City of Roseville* (2002) 97 Cal.App.4th 637, 647-648.)

That said, defendants failed to meet their burden of demonstrating the rate increase at issue here does not exceed what it costs to provide the water service. (§ 6, subd. (b)(5).) Defendants provide only *conclusory arguments*; they fail to support the arguments with *evidence*. In their opening brief, defendants essentially rely on a single document to demonstrate proportionality -- the notice. (AOB 30(c)-31) But, the notice

12

also contains only a *conclusory statement*, i.e., that "[t]he proposed rates for each classification of property are determined by the cost of providing water service to customers in that classification, based upon the water use characteristics of such property." (Cf. *Morgan v. Imperial Irrigation Dist.*, *supra*, 223 Cal.App.4th at pp. 900-901 [cost of service study made available to public].)

As to the information purportedly presented at the hearing, the flat percentage increase approved by the board was projected to "net" $160,820 in the first year, $610,205 in the second year, $1,018,475 in the third year, and $1,376,390 in the fourth year. Nothing in the administrative record explains how the net revenue forms a component of the cost to provide property-related service or how the net revenue derived per property is proportional to the cost of service attributable to that property. In simple terms, the net revenue appears to be a profit after expenses are deducted from revenues. Thus, defendants have failed to show the rate increase reasonably represents the cost of providing service to the affected properties. (*Howard Jarvis Taxpayers Assn. v. City of Roseville*, *supra*, 97 Cal.App.4th at p. 648.)

In their reply brief, defendants argue that, at the hearing, the board considered information the district was operating at a deficit and it was necessary to draw funds from the district's reserves to meet its obligations. In defendants' view: "Given the need to make sure it had sufficient revenue both for the current year as well as future years and given the uncertainties and unknowns as to future costs, the District opted to increase rates to allow for the rebuilding of meaningful reserves." Again, however, the district asks us to take an attorney's argument as evidence, which we cannot do. (Evid. Code, § 140; *People v. Kiney* (2007) 151 Cal.App.4th 807, 815; *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819, 843.) Nothing in the record identifies or quantifies historic or projected reserves needed for the service provided by the district. Nor does anything in the record pledge the net revenue for any specific purpose. For that reason, defendants' reliance on *Moore* is misplaced. (*Moore v. City of Lemon Grove* (2015) 237

13

Cal.App.4th 363, 369-375 [considering the evidence presented in support of the sanitation fees and charges imposed].) The mere fact that the district is a special district does not, by itself, meet defendants' burden of demonstrating proportionality. To carry its burden, an agency must generally provide evidence identifying the data used, analyzing the cost of service, and demonstrating the proportionality of the rate increase. None of this information was provided or made available to the district's customers.

Defendants rely on pages 52 through 55 and page 105 of the administrative record for the argument that the rate increase would "allow the District to essentially break even upon adoption of the new fees, and in the future years it would allow for the rebuilding of the District's reserves." Defendants do not explain their logic or analysis for the foregoing statement. Pages 52 through 55 consist of the proposed budget for 2016-2017 dated July 11, 2016 (identifying information for "2015-2016," "YTD Total," and "2016-2017"). Page 53 identifies the "[t]ransfer from reserves" for "2015-2016" as $150,000, the "YTD" as $50,000, and the "2016-2017" as $150,000. The net income reflected in the proposed budget is: $36,600 for "2015-2016"; $81,765.42 for "YTD"; and, $172,400 for "2016-2017." Pages 54 to 55 purportedly provide the profit and loss comparison for July 2015 through June 2016 as compared to July 2014 through June 2015. The net income reflected for July 2014 to June 2015 is negative $178,825.54 and July 2015 to June 2016 is negative $133,671.67.

Defendants fail to explain how the foregoing figures support their position that the "net" anticipated by the rate increase of $160,820 in the first year, $610,205 in the second year, $1,018,475 in the third year, and $1,376,390 in the fourth year correspond to the foregoing figures. We are not obligated to make arguments for defendants and may and do disregard conclusory arguments failing to disclose the reasoning by which defendants reached the conclusions they ask us to adopt. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

14

Because we conclude defendants failed to meet their burden of proving compliance with the proportionality requirement under section 6, we do not address their remaining arguments pertaining to compliance with the other substantive requirements.

II

*None Of The Affirmative Defenses Apply*

A

*Defendants Failed To Prove Government Code Section 66022 Applies*

Defendants raise two affirmative defenses under Government Code section 66022: (1) plaintiffs failed to file the petition within 120 days of the hearing adopting the rate increase and thus the petition was untimely under subdivision (a) of the statute; and (2) plaintiffs did not comply with the validation act procedures under subdivision (b) of the statute and thus the trial court lacked jurisdiction to consider their petition. Plaintiffs assert Government Code section 66022 is inapplicable because defendants failed to meet their burden of proving the rate increase falls within the definition of fees, capacity charges, or service charges, as provided in subdivision (c) of the statute. We agree with plaintiffs.

As the trial court noted and plaintiffs point out, Government Code section 66022 applies "only to fees, capacity charges, and service charges described in and subject to Sections 66013, 66014, and 66016." (Gov. Code, § 66022, subd. (c).) Defendants argue the rate increase qualifies as a capacity charge under Government Code section 66013 and, "[w]hile arguably constituting a 'fee' within the scope of Section 66013[, subdivision ](b)(5), the subject rates also constitute 'service charges' within the scope of Section 66022."

We do not consider defendants' lurking argument that the district's rate increase could "arguably" constitute a fee under Government Code section 66013, subdivision (b)(5). Defendants present no argument in that regard. As explained *ante*, we can and do disregard conclusory arguments failing to disclose the reasoning by which defendants

15

reached a conclusion they ask us to adopt. (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)

Defendants have further failed to meet their burden of proving the rate increase constitutes a service charge within the meaning of Government Code section 66022, subdivision (c). The argument relies on the following quote from *Paland*, which defendants characterize as providing that "charges for water delivery constitute charges for a service:" "Our Supreme Court has also indicated, however, that 'domestic water delivery through a pipeline is a property-related service within the meaning of [article XIII D]. [Citation.] Accordingly, once a property owner . . . has paid the connection charges and has become a customer of a public water agency, all charges for water *delivery* incurred thereafter are charges for a property-related service, whether the charge is calculated on the basis of consumption or is imposed as a fixed monthly fee.' " (*Paland v. Brookstrails Township Community Services Dist. Bd. of Directors* (2009) 179 Cal.App.4th 1358, 1367-1368.) *Paland* did not consider the meaning of the term "service charge" as defined and used in Government Code section 66022 and the incorporated statutes identified in subdivision (c) thereof. Cases are not authority for propositions not considered. (*McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626.)

As to the capacity charge argument, defendants assert any rate increase that includes as a component thereof a charge for capital improvements qualifies as a capacity charge under Government Code section 66013. (Citing *Utility Cost Management v. Indian Wells Valley Water District* (2001) 26 Cal.4th 1185; *Utility Cost Management v. East Bay Municipal Utility Dist.* (2000) 79 Cal.App.4th 1242; and *Regents of Univ. of Cal. v. City and County of San Francisco* (2004) 115 Cal.App.4th 1109.) Defendants direct us to a sentence in the notice and the category titled "capital expense" on the chart presented at the hearing as evidence the rate increase included an amount for capital improvements. The sentence in the notice stated, "[t]he rate increases are being proposed in order to provide sufficient revenue to pay for the increasing costs of maintenance and

16

operation of the District's water system, also to provide funding for physical plant and distribution system replacement." In defendants' view, "[t]he fact that the charges are also used for operating expenses does not take them outside of Section 66020 [*sic*]."

Plaintiffs disagree with defendants' assertion Government Code section 66022 applies when a portion of the rate increase qualifies as a capacity charge. They further argue a capacity charge "concerns charges for acquired or constructed 'new public facilities' " only and there is no evidence the district followed the other requirements in Government Code section 66013, subdivision (c) that "any payment received pursuant to a 'capacity charge' must be deposited into a separate capital facilities fund, and such funds must be accounted for to avoid any commingling with other moneys."

We need not address the merits of defendants' argument that a rate increase containing a capacity charge as a component of the increase triggers application of Government Code section 66022. The problem with defendants' argument is that they failed to prove the rate increase included *any* charge for public facilities within the meaning of Government Code section 66013, subdivision (b)(3). Defendants have the burden of proving an affirmative defense. (Evid. Code, § 500.)

As amended in 2007, effective January 1, 2008 (Stats. 2007, ch. 94, §1), capacity charge is defined in Government Code section 66013, subdivision (b)(3) as a "charge for public facilities in existence at the time a charge is imposed or charges for new public facilities to be acquired or constructed in the future that are of proportional benefit to the person or property being charged, including supply or capacity contracts for rights or entitlements, real property interests, and entitlements and other rights of the local agency involving capital expense relating to its use of existing or new public facilities. A 'capacity charge' does not include a commodity charge." The term public facilities means "public improvements, public services, and community amenities." (Gov. Code, §§ 66013, subd. (b)(6), 66000, subd. (d).)

17

Although the district stated in the notice that a portion of the rate increase would serve to provide funding for physical plant and distribution system replacement, there is no *evidence* in the record to support the conclusory assertion. The "capital expense" line item on the chart presented at the hearing also does not show or prove that a portion of the rate increase was a charge for public facilities. The chart merely lumps together revenue and deducts from that revenue the lumped together categories of expense and capital expense. The notice and chart do not show, as defendants assert, that "the information before the Board established that the fees were, in part, for physical plant, distribution system replacement and capital expense." We agree with the trial court that defendants "have not produced sufficient evidence to establish persuasively that *any* portion of the rate increase, in fact, satisfies the[ Government Code section 66013, subdivision (b)(3)] requirements." Thus, defendants failed to satisfy their burden of proving Government Code section 66022 applies to the rate increase. Nothing in the cases relied upon by defendants supports a conclusion to the contrary. (*People v. Thomas* (1992) 2 Cal.4th 489, 516 ["When we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts"].)

B

*Plaintiffs Are Excused From Complying With The Exhaustion Doctrine, If It Applies*

Defendants assert the trial court erred in applying the futility exception to the exhaustion doctrine in this case and believe this appeal requires us to decide whether the public participation process provided in section 6 constitutes an administrative remedy that must be exhausted before a ratepayer (i.e., plaintiffs) may challenge the substantive propriety of a property-related fee increase in court -- an issue expressly not decided by our Supreme Court in *Plantier*. (*Plantier*, *supra*, 7 Cal.5th at p. 388 ["We do not decide and express no view on the broader question of whether a Proposition 218 hearing could ever be considered an administrative remedy that must be exhausted before challenging

18

the substantive propriety of a fee in court"].)  Defendants believe the exhaustion doctrine applies and plaintiffs are thus barred from seeking to invalidate the rate increase because they failed to participate in the Proposition 218 protest process.

Plaintiffs assert "[t]his action . . . not only challenges the District's unlawful rate hike, but also the purported methodology employed in implementing the rate hike," as in *Plantier*.  Thus, in plaintiffs' view, they did not need to participate in the protest process to preserve their substantive challenges to the rate increase.  In the alternative, plaintiffs assert the trial court's finding that the futility exception applies is supported by substantial evidence.

Defendants reply that plaintiffs' challenge is unlike the methodological challenge considered in *Plantier* and the notice and hearing provided by the district provided an adequate remedy in this case.

We agree with defendants that the futility exception to the exhaustion doctrine does not apply under the facts of this case.  We also agree with defendants that plaintiffs' allegations are unlike those raised in *Plantier*.  Like our Supreme Court in *Plantier*, however, we decline to consider whether the public participation process provided in section 6 constitutes an administrative remedy that must be exhausted prior to litigation. (*Plantier*, *supra*, 7 Cal.5th at p. 388.)  We conclude that, even if the exhaustion doctrine applies, plaintiffs were excused from complying with it because defendants' notice did not meet the procedural requirements under section 6.

1

*The Exhaustion Doctrine Generally*

"Generally, 'a party must exhaust administrative remedies before resorting to the courts.  [Citations.]  Under this rule, an administrative remedy is exhausted only upon "termination of all available, nonduplicative administrative review procedures." '  [Citations.]  'The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." '  [Citation.]

19

"The exhaustion doctrine is primarily grounded on policy concerns related to administrative autonomy and judicial efficiency.  [Citation.]  The doctrine favors administrative autonomy by allowing an agency to reach a final decision without interference from the courts.  [Citation.]  Unless circumstances warrant judicial involvement, allowing a court to intervene before an agency has fully resolved the matter would 'constitute an interference with the jurisdiction of another tribunal.'  [Citation.]  If exhaustion were not required, a litigant would have an incentive to avoid securing an agency decision that might later be afforded deference.  [Citation.]  Further, creating an agency with particular expertise to administer a specific legislative scheme would be frustrated if a litigant could bypass the agency in the hope of seeking a different decision in court.

"As to judicial efficiency, the doctrine allows an administrative agency to provide relief without requiring resort to costly litigation.  [Citation.]  Even when an administrative remedy does not resolve all issues or provide complete relief, it still may reduce the scope of litigation.  [Citation.]  Requiring a party to pursue an available administrative remedy aids judicial review by allowing the agency to draw upon its expertise and develop a factual record for the court's consideration." (*Plantier*, *supra*, 7 Cal.5th at pp. 382-383.)

"Even when a procedure is considered an administrative remedy, a party may be excused from exhausting it if an exception applies." (*Plantier*, *supra*, 7 Cal.5th at p. 384.)  The exceptions generally cover circumstances in which the policies in favor of the exhaustion requirement are outweighed by considerations of fairness and practicality, such as "where 'the administrative remedy is inadequate [citation]; where it is unavailable [citation]; or where it would be futile to pursue such remedy [citation].' " (*Automotive Management Group, Inc. v. New Motor Vehicle Bd.* (1993) 20 Cal.App.4th 1002, 1015.)

## 2

### *The Futility Exception Does Not Apply*

The futility exception is very narrow and does not apply unless the person invoking it can positively state that the agency declared what its decision will be in a particular proceeding. (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 418.) In asserting the futility exception, plaintiffs relied on the over 150 letters submitted to the district by other customers in advance of the rate increase hearing. Those letters do not demonstrate that the district positively decided to adopt the 50 percent rate increase proposal *prior to the hearing*. The trial court thus erred in applying the futility exception.

## 3

### *This Case Is Not Like Plantier*

In *Plantier*, a restaurant owner objected to the water district's decision "that the [equivalent dwelling units] assigned to his property were being changed from 2.0 to 6.82, resulting in a substantial fee increase." (*Plantier*, *supra*, 7 Cal.5th at p. 378.) The restaurant owner and two other commercial property owners sued the water district after the water district denied their administrative claim that the equivalent dwelling unit assignment method violated Proposition 218's proportionality requirement. (*Ibid*.) The water district asserted the complaint was barred because the plaintiffs in that case failed to challenge the method of allocating the equivalent dwelling units during the water district's Proposition 218 rate increase proceedings in 2012, 2013, and 2014. (*Id*. at pp. 377-378, 379.) The trial court concluded Proposition 218 created an additional unexhausted remedy; the Court of Appeal reversed. (*Id*. at pp. 379-380.) Our Supreme Court affirmed. (*Id*. at p. 390.)

Our Supreme Court, "[f]or purposes of th[e] analysis, . . . assume[d] that a Proposition 218 rate hearing is an 'administrative remedy' because that is the way the parties and the courts below ha[d] framed the issue presented by th[e] dispute."

(*Plantier*, *supra*, 7 Cal.5th at pp. 383-384.) The court held that, "[e]ven if a Proposition 218 hearing could be considered an administrative remedy, it would not provide an adequate remedy for a challenge to the method used to allocate the fee burden in th[at] case." (*Id*. at p. 376.) It explained "a Proposition 218 rate increase hearing is not a forum to protest an existing rate structure . . . ." (*Id*. at p. 387.)

Here, plaintiffs are not challenging the district's methodology as to the allocation of the water service fee in relation to what other parcels within the district's service area are charged. Plaintiffs instead directly challenge the rate increase based on defendants' noncompliance with the procedural and substantive requirements of Proposition 218. This case is thus unlike *Plantier* and the analysis applied in that case is inapplicable under the facts presented.

4

*The Inadequate Remedy Exception Nonetheless Applies*

Now rested at our feet is defendants' argument that we must decide whether the notice and hearing requirements in section 6 create an administrative remedy that must be exhausted before a ratepayer may seek relief in court. Like our Supreme Court in *Plantier*, we see no need to address the broad question posed by defendants. Presuming without deciding that section 6's public participation procedure is considered an administrative remedy, we conclude plaintiffs were excused from the exhaustion requirement under the inadequate administrative remedy exception to the doctrine.[6] (*Plantier*, *supra*, 7 Cal.5th at p. 384 ["Even when a procedure is considered an administrative remedy, a party may be excused from exhausting it if an exception applies"].)

---

[6] Given this conclusion, we decline defendants' invitation to consider the application and merits of *Hill RHF Housing Partners, L.P. v. City of Los Angeles* (2020) 51 Cal.App.5th 621, review granted September 16, 2020, S263734.

" 'A party is not required to exhaust the available administrative remedies when those administrative procedures are the very source of the asserted injury. [Citation.] This rule is merely another facet of the inadequate administrative remedy exception to the exhaustion rule. [Citation.] Under this exception, a party is excused from exhausting the administrative remedies where the challenge is to the constitutionality of the administrative agency itself *or the agency's procedure*.' " (*Unnamed Physician v. Bd. of Trustees* (2001) 93 Cal.App.4th 607, 621.) The exception applies, for example, when an administrative remedy fails to satisfy the standards of due process. (*Imagistics International, Inc. v. Dept. of General Services* (2007) 150 Cal.App.4th 581, 591; *AIDS Healthcare Foundation v. Dept. of Health Care Services* (2015) 241 Cal.App.4th 1327, 1350.)

We asked the parties to submit supplemental briefs addressing whether the due process exception to the exhaustion doctrine should apply under the facts of this case. Defendants appropriately note due process protections do not apply to quasi-legislative decisions but acknowledge section 6 provides "a person or entity challenging the new rates with certain procedural rights." Defendants further argue the notice and protest provisions of section 6 are consistent with due process and the district complied with those procedural requirements, precluding the application of an exception to the exhaustion doctrine. In defendants' view, there is no basis for excusing plaintiffs' failure to exhaust the section 6 protest procedure when considering the significant interests and concerns underlying the exhaustion doctrine.

Plaintiffs argue the district's violation of the procedural requirements under section 6 provides an additional basis for being excused from exhausting any administrative remedy. They assert the district violated section 6's notice requirements by: (1) providing "a generic example of how one hypothetical customer's fee would increase" rather than the actual amount of the rate increase pertinent to each parcel; (2) failing to explain in the notice how the amount of the rate increase was calculated; and

23

(3) failing to prove the notice was mailed to all ratepayers. Plaintiffs further argue the district's hearing was inadequate because "the Administrative Record reveals the District engaged in no public (or any) explanation of its consideration of the proposed Rate Hike."

We conclude that, even if the exhaustion doctrine applies to plaintiffs' challenge, plaintiffs were excused from the exhaustion requirement under the inadequate administrative remedy exception because the district's notice failed to comply with the express procedural requirements set forth in the California Constitution. It seems anomalous to suggest that a ratepayer may not challenge a section 6 rate increase for failing to participate in the protest procedure outlined in section 6 when the agency failed to comply with the express notice requirements set forth in that procedure -- especially where the agency fails to carry its burden of proving the notice was mailed to all ratepayers and plaintiffs assert they did not receive the notice and were unaware the rate increase was being considered. Thus, while defendants are correct that due process protections do not extend to quasi-legislative proceedings (*Monsanto v. Office of Environmental Health Hazard Assessment* (2018) 22 Cal.App.5th 534, 562), we find the notice and hearing provisions in section 6 analogous to due process protections and believe the inadequate administrative remedy exception appropriately applies here.

Defendants assert the district complied with the notice requirements under section 6 because: (1) it prepared and mailed the notice to record owners subject to the rate increase, relying on the notice and the declaration of Richard Bedal; (2) the notice "listed the current rate for a residential customer and indicated how each step of the increase would increase that rate by 50 percent," allowing a customer to "look at his or her current rate and determine how the increase would impact rates in the future"; (3) the notice "indicated the basis for the increase"; and (4) the notice "advised of the date, time and location of the hearing." We conclude the notice is deficient for three reasons.

First, defendants fail to mention or acknowledge that the trial court denied defendants' request to take judicial notice of Bedal's declaration because the "document is not part of the administrative record and is not proper for judicial notice." Defendants do not challenge that evidentiary determination on appeal. Thus, the only evidence in the record upon which defendants rely to prove the district provided the notice to its ratepayers is a copy of the notice. Unquestionably, a mere copy of the notice by itself does not meet defendants' burden of proving compliance with this constitutional procedural requirement.

Second, the district's hide-the-ball approach as to amount of the rate increase is simply incongruent with the purpose of the procedural requirements. "We ' " 'must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." ' " ' [Citation.] In so doing, we are obligated to construe constitutional amendments in a manner that effectuates the voters' purpose in adopting the law." (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority*, *supra*, 44 Cal.4th at p. 448.) The purpose of the procedural requirements was to enhance ratepayer consent. (*Ibid.*) Viewed through that lens, a local government must provide ratepayers with notice of the *actual* amount of the rate increase pertinent to him, her, or it to allow the ratepayer a meaningful opportunity to determine whether to consent to or oppose it. The hypothetical example provided by the district does not meet this standard. The hypothetical in the notice does not square with the constitutional obligation imposed upon the district to calculate the amount of the charge to be imposed upon *each* parcel and to provide ratepayers with notice of *such* amounts. (§6, subd. (a)(1).) The district clearly had the information at its disposal given that it calculated the total revenue it anticipated to receive from the rate increase, as presented at the hearing. (AR 105)

Third, section 6 provides the notice of a rate increase shall provide the basis upon which the amount was calculated. (§ 6, subd. (a)(1).) The following portion of the notice

relied upon by the district does not meet the basis requirement:  "The rate increases are being proposed in order to provide sufficient revenue to pay for the increasing costs of maintenance and operation of the District's water system, also to provide funding for physical plant and distribution system replacement.  The proposed rates for each classification of property are determined by the cost of providing water service to customers in that classification, based upon the water use characteristics of such property."

The first sentence provides the reason not the basis for the rate increase.  The reason for the increase was purportedly to "provide sufficient revenue to pay for the increasing costs of maintenance and operation of the District's water system, also to provide funding for physical plant and distribution system replacement."[7]  The second sentence also does not provide the basis upon which *the increase* was calculated.  The proposed increase was a flat percentage applied to all parcels within the district.  The notice, however, simply stated that the "proposed rates for each classification of property are determined by the cost of providing water service to customers in that classification, based upon the water use characteristics of such property."  This merely states why different rates are charged to different types of properties, but it fails to inform ratepayers *how* the district calculated the flat proposed 50 percent rate increase across all parcels.  The notice thus does not comply with the procedural requirement of providing a basis for the proposed rate increase.

We are mindful that "Proposition 218 was designed to:  constrain local governments' ability to impose assessments[ and property-related fees]; place extensive requirements on local governments charging assessments[ and property-related fees]; shift the burden of demonstrating assessments' [and property-related fees'] legality to

---

[7]     Notably absent from the stated reason is any mention of rebuilding the district's reserves due to previous budget shortfalls.

local government; make it easier for taxpayers to win lawsuits; and limit the methods by which local governments exact revenue from taxpayers without their consent." (*Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority*, *supra*, 44 Cal.4th at p. 448.) Compliance with section 6's procedural requirements is fundamental to ensure ratepayers have the information necessary to determine whether to, among other things, submit a written protest to the rate increase in advance of the hearing.

Moreover, application of the exception under these facts does not run afoul with the exhaustion doctrine's policy concerns related to administrative autonomy or judicial efficiency. Instead, under the circumstances presented, the policies in favor of the exhaustion requirement are outweighed by considerations of fairness and practicality. We thus conclude that, inasmuch as the district's procedure for adopting the rate increase did not comply with the procedural requirements imposed by the California Constitution, plaintiffs were excused from exhausting any administrative remedy that may apply under section 6.

## III

### *The Attorney Fee Award Was Appropriate*

Code of Civil Procedure section 1021.5[8] " ' "codifies the 'private attorney general' doctrine under which attorney fees may be awarded to successful litigants. 'The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible. [Citations.]' [Citation.] Entitlement to fees under section 1021.5 requires a showing that the litigation: '(1) served to vindicate an important public

---

[8] All further references to section 1021.5 in part III of the Discussion are to the Code of Civil Procedure.

right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' " (*Robles v. Employment Development Dept.* (2019) 38 Cal.App.5th 191, 199.)

Defendants argue:  (1) plaintiffs did not demonstrate they conferred a significant benefit on the general public or a large class of people; (2) plaintiffs failed to show the burden of private enforcement outweighed their own personal interest when comparing the significance of the rate increase plaintiffs faced (which defendants estimated to exceed $200,000) and the amount in legal fees expended to protect their rights; (3) plaintiffs failed to establish the hours expended were reasonable because their "redacted statements do not fully describe each billed activity"; and (4) the trial court erred and abused its discretion in failing to reduce plaintiffs' fee amount because plaintiffs did not attain all of their goals in this litigation. We disagree on all points.

A

*Plaintiffs Conferred A Significant Benefit On A Large Class Of Persons*

The trial court found no merit in defendants' argument that plaintiffs "failed to produce evidence that this litigation conferred a significant benefit on the general public and has merely made conclusory arguments that such a benefit exists."  The court explained "that unlike the cases [defendants] cite[d], this case does not merely involve the 'sending of a message' in order to demonstrate a significant benefit to a large class of persons."  The court found defendants failed to "contradict P[laintiffs]' assertions in their opening brief that over 7,500 District customers directly benefited from P[laintiffs]' challenge as the rate increase was going to result in an approximately 200% increase to all customers."  Thus, "[w]hile P[laintiffs]' success may *also* send a message, the evidence cited by P[laintiffs] supports a finding that it results in a direct impact on [the district's] customers who would otherwise have been required to continue to pay the unconstitutional rate hike.  This is a significant benefit to a large class of persons, and

28

certainly goes beyond P[laintiffs]' own personal interest, contrary to [defendants'] arguments."

Defendants argue the trial court erred for the following reasons: (1) plaintiffs presented no evidence "that [their] victory provided a <u>significant</u> benefit to a large class of people or the public in general other than those limited rate payers owning an apartment or multi-unit complex within the District"; (2) plaintiffs' victory cannot demonstrate a significant benefit to a large class of people because, "[w]hile the rates of water users within the same category as [plaintiffs] might go down, the District might need to go through the process of increasing rates for other residents in order to compensate for and replace the operating revenue lost due to [plaintiffs'] challenge"; and (3) "any impact beyond an acknowledgment that the District must adhere to the provisions of Article XIII D could be extremely limited" because "the series of rate increases last only through July of 2019."

First, defendants' attempt to limit the impact of the judgment to "rate payers owning an apartment or multi-unit complex" is not well taken. The trial court issued a peremptory writ of mandate commanding defendants to "[s]et aside and vacate the water rate increases approved by FLORIN COUNTY WATER DISTRICT on December 12, 2016." The judgment and peremptory writ of mandate were not limited to the rate increase pertaining to apartments or multi-unit complexes. Second, defendants do not challenge the trial court's reliance on plaintiffs' factual assertion that over 7,500 district customers benefited from the underlying action. We fully agree with the trial court's analysis, to which defendants provide no credible challenge. Any actions defendants may take in the future in response to the judgment -- i.e., the threatened increased rates that may be imposed on other classes of water users -- do not diminish what plaintiffs achieved in this litigation.

B

*The Trial Court Did Not Abuse Its Discretion*

*In Applying The Financial Interest Prong*

The financial burden of private enforcement prong of section 1021.5 " 'focuses on the financial burdens and incentives involved in bringing the lawsuit.' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1215.) " ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' " ' " (*Ibid*.) The trial court weighs the costs and benefits by "plac[ing] the estimated value of the case beside the actual cost and mak[ing] the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case . . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Id*. at p. 1216.)

As noted in *Los Angeles Police Protective League*, however, the section 1021.5 factors are interrelated: "Where the benefits achieved for others are very high it will be more important to encourage litigation which achieves those results. Accordingly, it will be more important to offer the bounty of a court-awarded fee than where the public benefits are less significant. Thus, the courts should be willing to authorize fees on a lesser showing of need than they might where the public benefits are less dramatic. This means the court sometimes should award fees even in situations where the litigant's own expected benefits exceed its actual costs by a substantial margin. [¶] In contrast, where the public benefits are rather modest the courts should award fees only where the litigant's own expected benefits do not exceed its costs by very much (or possibly are even less than the costs of the litigation). To put it another way, when the ratio between public benefits and the litigant's expected benefits is high the court should award fees

30

even though the ratio between expected litigant benefits and litigant costs is high. On the other hand, where the ratio between public benefits and expected litigant benefits is relatively low so must be the ratio between expected litigant benefits and litigant costs in order to justify a fee award." (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 10.)

The trial court considered defendants' argument that plaintiffs failed to show "the cost of pursuing this matter was disproportionate to the monetary benefit obtained" because the "annual increase of $92,256 [in plaintiffs' rate], as well as the potential decrease in property value of several million dollars if the rate increases remained" far exceeded the approximately $66,000 in legal fees. Relying on *Los Angeles Police Protective League*, the trial court found "that while P[laintiffs] did indeed have a financial interest in the outcome of this litigation, the benefits achieved for others were very high in this matter. If the unconstitutional rate increase went unchallenged, [defendants] were to collect a significant net profit annually, to the detriment of all rate payers. The Court, [in] its discretion, finds that considering P[laintiffs]' own expected benefits in this matter, P[laintiffs]' actual costs, and the significant public benefits that were achieved, including benefits to over 7500 rate payers, it is important to provide a court-awarded fee in this matter . . . ." (Citing *Los Angeles Police Protective League v. City of Los Angeles*, *supra*, 188 Cal.App.3d at p. 10.)

On appeal, defendants simply reiterate the arguments made in the trial court. They assert plaintiffs' recovery of attorney fees under section 1021.5 is not justified because the "overall cost [of the rate increase] for [plaintiffs] w[ould] exceed $200,000" and plaintiffs alleged the rate increase, "if . . . allowed to stand, w[ould] reduce the fair market value of the Sunflorin Apartments by several million dollars." Plaintiffs' personal stake in the outcome of the case was thus, in defendants' view, disproportionate to the burden of private enforcement as demonstrated by the approximately $66,000 in attorney fees awarded to plaintiffs.

31

Defendants fail to mention, address, or challenge the trial court's reasoning and findings under the balancing approach it employed in accordance with *Los Angeles Police Protective League* -- i.e., that attorney fees are appropriate because, even though plaintiffs had a financial interest in the outcome of the litigation, the public benefits achieved were high. By merely reiterating the arguments made in the trial court, defendants in essence ask us to substitute our judgment for that of the trial court under a de novo standard of review and disregard the trial court's exercise of discretion. This we will not do.

The trial court's analysis and findings are subject to an abuse of discretion standard of review. (*Los Angeles Police Protective League v. City of Los Angeles*, *supra*, 188 Cal.App.3d at p. 11; *Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 994.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Defendants do not argue the trial court applied an incorrect legal standard, or its decision was arbitrary, irrational, or otherwise exceeded the bounds of reason. Indeed, by failing to address the trial court's reasoning and findings, defendants raise no argument that the trial court abused its discretion at all. Even if we were to agree with defendants that plaintiffs' expected benefits exceeded the actual costs of litigation by a substantial margin (which we do not decide), defendants fail to show the trial court abused its discretion in applying the next step of the analysis as stated in *Los Angeles Police Protective League* -- that the bounty is nonetheless appropriate because the public benefits achieved were high. We thus affirm the trial court's finding.

C

*The Trial Court Did Not Abuse Its Discretion In Determining The Award Amount*

"[W]e review the amount of an attorney fees award for an abuse of discretion. [Citation.] Unless an award is 'clearly wrong,' no such abuse of discretion can be demonstrated. [Citation.] In other words, a trial court's attorney fee award will not be set aside 'absent a showing that it is manifestly excessive [under] the circumstances.' " (*Cruz v. Fusion Buffet, Inc.* (2020) 57 Cal.App.5th 221, 237.)

Here, defendants presented the trial court with two arguments as to why the fee amount was unreasonable. First, defendants argued some of plaintiffs' fee statements contained entries that were "improperly block-billed" or "overly-redacted such that the Court cannot determine the hours spent were reasonable." The trial court disagreed, finding: "The Court has reviewed the objected-to entries, and does not find the entries are improperly redacted or block-billed. The Court, in its discretion, finds that the provided information is sufficient to determine that the hours spent were reasonable, and finds that the hours spent were in fact reasonable."

Second, defendants argued the requested fee amount needed to be reduced because plaintiffs failed to prevail on several legal theories, their request for damages, an ex parte application to stay enforcement of the rate increase, and a motion to compel discovery responses. The trial court again disagreed, stating: "This Court finds the time P[laintiffs]' counsel spent was reasonable, even on legal theories or motions for which P[laintiffs] did not prevail. The Court, in its discretion, declines to reduce the hours sought on the basis that P[laintiffs] were not successful in every aspect of this litigation."

Defendants challenge both findings on the same grounds asserted in the trial court. We have reviewed the timesheets and billing information attached to the declaration of Andrew D. Bluth in support of the motion for attorney fees and conclude the trial court did not abuse its discretion in finding it had sufficient information to determine whether the hours spent were reasonable. As to the requested reduction in the fee amount,

33

nothing in defendants' brief explains why or how the trial court abused its discretion under the facts of this case.  Defendants merely assert, in conclusory fashion, that "given the lack of total success on all goals, the trial court should have exercised its discretion and reduced the amount of fees recovered related to the ex parte application, the motion to compel including time spent drafting the underlying discovery and related to recovery of damages."  Defendants again fail to disclose the reasoning by which they ask us to reach the conclusion they want us to adopt -- that is that the trial court abused its discretion.  (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)  We will not substitute our judgment for that of the trial court and find no basis for reversing the trial court's finding.

DISPOSITION

The amended judgment is affirmed.  Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


                                         /s/_____
                                         Robie, J.


We concur:


/s/_____
Raye, P. J.


/s/_____
Blease, J.