Filed 2/24/25  Pongs v. City of Riverside CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CARL PONGS et al., | D083773 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CVRI2205534) |
| CITY OF RIVERSIDE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed.

McNeil Law Offices and Walter P. McNeill for Plaintiffs and Appellants.

Stradling Yocca Carlson & Rauth LLP, Brian P. Forbath, Allison E. Burns, Gregory J. Maestri; Phaedra A. Norton, City Attorney, Susan D. Wilson, Assistant City Attorney, and Ruthann M. Salera, Deputy City Attorney, for Defendant and Respondent.

# INTRODUCTION

This case involves a reverse validation action in which two residents of the City of Riverside (City), Carl Pongs and Rick Moslenko,[1] challenge resolutions adopted by the Riverside City Council (City Council) authoring the issuance of a series of water revenue bonds. According to Pongs, the resolutions and resulting water bonds violate the constitutional provisions created by Proposition 218[2] and improperly allocate revenue to pay for the pension debts of retired City employees under California's Public Employees Retirement System (CalPERS). As a result, Pongs contends the trial court erred by entering judgment in favor of the City in his reverse validation action and claim for declaratory and injunctive relief. As we shall discuss, we are unpersuaded by Pongs's contentions and we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

The City's Charter (the Charter) permits the City to "make and enforce all laws and regulations in respect to municipal affairs, subject only to such

---

[1] We refer to the plaintiffs collectively as Pongs for ease of reference.

[2] "In November 1996, . . . the electorate adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution." (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 682 (*Howard Jarvis*).) Proposition 218 restricts the types of property taxes a public agency may assess, and it imposes procedural and substantive limitations when a public agency seeks to impose or increase certain fees or charges. (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 381 (*Plantier*).)

[3] As a preliminary matter, we note a deficiency in Pongs's recitation of the factual background. California Rules of Court, rule 8.204(a)(1)(C) requires each appellate brief to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." Courts interpret this rule to mean that the assertions of fact set forth in an appellate brief must be supported by a citation to the part of

restrictions and limitations" as required by the Charter and the California Constitution. Through the Charter, the City established the Department of Public Utilities (DPU), which is responsible for the City's electric and water supply. The Charter permits the DPU to establish the rates of water utility operations, subject to approval by the City Council.

Following the creation of the Charter, the City adopted Resolution No. 5001, which granted the City the authority to, "by resolution or resolutions, issue and sell revenue bonds for any City purpose or purposes." One such resolution, Resolution 17664 (the "Master Resolution"), authorized the issuance of bonds secured by revenues from the City's water system. The Master Resolution also permits the City to, "from time to time by

---

the record where that fact appears. (See *Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 936, fn. 4 [defendants' assertion of fact was not supported by citation to record]; see also *In re S.C.* (2006) 138 Cal.App.4th 396, 406 [each party "must cite to the record showing exactly where the objection was made"].) We are entitled to disregard portions of the brief that do not properly cite to the record. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947; *Yeboah v. Progeny Ventures, Inc.* (2005) 128 Cal.App.4th 443, 451.)

Here, Pongs's opening brief does not include a discrete factual background section, and Pongs repeatedly makes factual assertions without citations to the record where the facts appear. For example, Pongs proffers that he and Moslenko "are residents of single family homes in Riverside, and they are also small farmers in the greenbelt area of the City growing specialty crops like ornamental grasses, landscaping plants, and avocados. As ratepayers in the City who pay close attention to water issues they were alert to what was happening when they noticed that another water revenue bond issuance was up for approval." Pongs provides no record citation for any of the extensive facts alleged in this paragraph, and we disregard his unsupported proffer. Pongs's reply brief suffers from the same glaring deficiencies. We disregard any portion of the briefs that do not properly cite to the record, which is, in this case, extensive.

3

Supplemental Resolution establish one or more Series of Bonds, payable from Net Operating Revenues[.]"

The Master Resolution sets forth a "rate covenant" that requires the City to collect rates and charges as follows:

> "The City shall prescribe, revise and collect such rates and charges for the services, facilities and water of the Water System which, after making allowances for contingencies and error in estimates, shall be at least sufficient to pay the following amounts in the order set forth:
>
> "(a) Operating and Maintenance Expenses;
>
> "(b) The interest on and Bond Obligation (or Mandatory Sinking Account Payment) of the Outstanding Bonds (whether Serial or Term Bonds) as they become due and payable;
>
> "(c) All other payments required for compliance with this Resolution or any Supplemental Resolutions; and
>
> "(d) All other payments required to meet any other obligations of the City which are charges, liens or encumbrances upon or payable from Net Operating Revenues.
>
> "The charges shall be so fixed that the Net Operating Revenues, plus any amounts on deposit in the Surplus Account pledged by resolution of the City Council to the payment thereof, shall be at least 1.25 times the amounts payable under (b) above and 1.0 times the amounts payable under (c) and (d) above."

The text of the Master Resolution includes definitions of many of its operative terms. Net operating revenues is defined as gross operating revenues, less operating and maintenance expenses. Operating and maintenance expenses include "those expenses of operating and maintenance of the [w]ater [s]ystem and includes any necessary contribution to retirement of [w]ater [s]ystem employees."

4

In 2022, the Riverside City Council adopted the resolutions at issue in this case: Resolution Nos. 23917[4] and 23924. Resolution No. 23924 (hereinafter the 2022A Bonds Resolution) authorized the City to issue a series of water revenue bonds—the "2022A Bonds"—in an amount not to exceed $70,000,000. The purpose of the 2022A Bonds was to finance capital improvements to the City's water system, including the "2022 Project," and costs related to the issuance of the bonds. The 2022 Project was a series of construction plans related to the storage, transmission, and distribution of the City's water supply, including, inter alia, well projects, transmission pipeline projects, and treatment plant projects.

The 2022A Bonds Resolution required revenue from the 2022A Bonds to be placed in the "Water Revenue Bonds, Issue of 2022A, Construction Fund." These funds were required to be used and withdrawn "to pay the [c]onstruction [c]osts of any facility or facilities necessary or convenient for the storage, transmission or distribution of water, or incidental to, or in connection with, the operation of the [w]ater [s]ystem; or to pay or reimburse the City for interest on all of a portion of the 2022A Bonds during the construction period."

---

4    Resolution No. 23917 was adopted to "provide the use of future bond proceeds for capital financing requirements to the [DPU's] Five-Year Capital Improvement Project." United States Treasury Regulation section 1.150-2 requires the City to "adopt a formal declaration of intent to reimburse expenditures with future bond proceeds," and Resolution No. 23917 served as this declaration. Although Pongs challenged both Resolution Nos. 23917 and 23924 in the trial court, it appears Pongs's claims on appeal relate primarily to Resolution No. 23924, as this was the resolution that authorized the issuance of the 2022A Bonds. However, Pongs asks us to read the resolutions together and construe his appeal to challenge both resolutions. We do so in reaching our conclusions in this case.

5

An "official statement" was prepared to provide public information in connection with the issuance of the 2022A Bonds. The official statement reflects that the City's Board of Public Utilities contracted with a professional consultant to create a "water utility cost of service adjustment and rate design project for financial planning purposes and to prepare for the next water utility rate plan." According to the official statement, the rate design project anticipated rate increases averaging 6.30 percent beginning July 1, 2023, and 5.50 percent thereafter. However, the official statement also recognized that any future rate increases must be approved by the City Council and were subject to the constitutional limitations established by Proposition 218. A section of the official statement titled "constitutional limitations," stated that the City "expects any future water rate increases will comply with Proposition 218's procedural and substantive requirements to the extent applicable thereto."

Approximately one month after the City adopted the 2022A Bonds Resolution, Pongs filed a complaint for "reverse validation" and declaratory and injunctive relief. Pongs's complaint averred he and Moslenko were residents of the City and ratepayers under the City's water distribution system. Pongs sought to invalidate the 2022A Bonds Resolution, and he proffered two main arguments against the issuance of the bonds. First, he argued the 2022A Bonds Resolution obligated the City to raise water rates to comply with the rate covenant in the Master Resolution, and the City failed to comply with the procedural and substantive requirements of Proposition 218 prior to taking action to raise rates. Second, Pongs contended the 2022A Bonds Resolution improperly required rate payers to "pay the pension liabilities of long-ago retired [City] employee who provide no service in connection with present and future water rates imposed on rate payers . . . ."

6

The City responded that the 2022A Bonds Resolution did not violate Proposition 218. In support of its position, the City provided declarations from the City's deputy general manager and chief financial officer. The deputy general manager attested that at the time of the issuance of the 2022A Bonds, the City was compliant with the rate covenant set forth in the Master Resolution without the need to increase revenues or decrease costs. He explained that *if* the DPU's ratio of net operating revenue to debt accrual violated the rate covenant in the future, the DPU may "either increase revenues, decrease [o]perations and [m]aintenance costs, decrease debt service, apply surplus revenues, or a combination of the foregoing steps . . . ." Thus, he averred that if the City were at risk of violating the rate covenant and chose not to raise water utility rates, "the City could use other available funds to pay off the [2022A Bonds], or refinance the outstanding [2022A Bonds] to reduce the debt service."

The City's chief financial officer explained in his declaration that the City is obligated to make annual contributions towards its employees' retirements under its contract with CalPERS. He proffered that as of November 2022, the DPU employed approximately 164 fulltime positions. These employees are members of the CalPERS retirement system, and their salaries and pensions are apportioned and paid by DPU revenues.

The chief financial officer's declaration also explained that the DPU is required to make annual payments to amortize its unfunded accrued pension liability (UAL). The UAL "represents the difference between the cost of future pensions benefits and the current market value of funds set aside to pay those benefits." In other words, "the UAL is the amount that must be funded in order for there to be enough money for the promised benefits to be paid when due." The "UAL is not for only past employees, but represents the

7

earned pension benefits owed to current employees as well." A CalPERS actuary determines the annual contributions for the UAL over incremental periods.

In the final paragraphs of his declaration, the City's chief financial officer explained that in 2020, the City issued a series of pension obligation bonds (POBs) to pay off the substantial portions of its outstanding UAL. The DPU's proportional share of the POBs are determined by the City's finance department and based on the costs of the annual pension benefits. The DPU is obligated to make annual payments from its water revenues until the year 2045.

After considering the parties' pleadings and evidence, the trial court issued a tentative ruling in favor of the City. In its ruling, the court found that neither the 2022A Bonds Resolution, nor the official statement for the 2022A Bonds, adopted a rate increase that triggered the procedural requirements of Proposition 218. To the extent that the 2022A Bonds created debt obligations that could lead to a future rate increase, the trial court found that the City was not prohibited from taking such action so long as it complied with the requirements of Proposition 218 before actually enacting a raise in rates. Moreover, as a factual matter, the court found that even without the rate increases contemplated in the official statement, "it appears [the] City can meet the [rate covenant] requirements under the [official statement] and Master Resolution."

As to Pongs's claim that the revenue from the 2022A Bonds would be improperly used to pay for the unfunded accrued liability pension costs of retired DPU employees, the court found Pongs's argument lacked merit. The court first noted that Pongs had provided no legal authority, aside from article XIII D of the California Constitution, in support of his claim. The

8

court then found that pension obligations are part of the DPU employees' salaries, and "[w]ithout employees, the services at issue could not be provided." Thus, the pension-related costs were expenses required to run the DPU. For these same reasons, the court found Pongs's claim for injunctive and declarative relief failed.

Following a hearing in August 2023, the trial court adopted its tentative ruling as its final ruling. The trial court entered judgment in favor of the City, and Pongs timely appealed.

DISCUSSION

As an initial matter, we note that the "legal discussion" section of Pongs's opening brief lacks citation to any legal authority and includes lengthy unsupported proffers. Although Pongs's reply brief includes citation to some legal authority, the brief also includes multiple pages of proffers without citation. We disregard any assertions in the parties' briefs that are not properly supported by citations to the record or relevant legal authority. (See *County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 (*Singh*) [" '[W]e may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record [citation]. We may disregard legal arguments that are not supported by citations to legal authority [citation] or are conclusory [citation].' [Citations.] Further, we may treat a point that is not supported by cogent legal argument as forfeited."].)

From what remains and as best we can discern, we perceive two broad arguments in Pongs's briefs. Pongs first contends that in order to comply with the rate covenant set forth in the Master Resolution, and to avoid a "rate covenant default," the 2022A Bonds Resolution necessitated a water utility rate increase that triggered the procedural requirements of

9

Proposition 218. According to Pongs, the City failed to comply with the notice and hearing requirements of Proposition 218 prior to taking action to raise those rates. In his second argument, Pongs contends the 2022A Bonds Resolution improperly allocated revenue to pay for the pension liabilities of retired DPU employees.

The City responds that Pongs lacks standing to challenge the City's compliance with the rate covenant because the record does not include evidence that he or Moslenko are bondholders, and therefore there is no evidence they are parties to or beneficiaries of the rate covenant. But assuming Pongs does have standing, the City argues his claim is premature because the City had not enacted a raise in rates at the time of Pongs's validation action. Finally, the City contends its allocation of water revenue to fund the DPU's pension obligations is proper because the DPU is obligated to pay for its employees' salaries, which includes their earned pensions and the DPU's share of the unfunded accrued liability pension costs and balance of the pension obligation bonds.

As we shall discuss, although we conclude Pongs has standing to challenge the 2022A Bonds resolution, the City has the better argument.

A.    *General Legal Principles*

Under Code of Civil Procedure[5] section 860, a public agency may file a validation claim to determine the validity of particular actions by the agency. If the public agency fails to file such a claim, "any interested person" may bring a claim to determine the validity of the agency's action. (§ 863; *Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 29–30 (*Kaatz*).) A validation claim

---

5    Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

by an interested person is commonly referred to as a " 'reverse validation action.' " (*Kaatz,* at p. 30, fn. 16.)

In reviewing the constitutional issues raised in the instant "reverse validation" action, we exercise "independent judgment." (See *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 450 [exercising "independent judgment" in reviewing whether a public agency violated article XIII D].) However, "[e]ven when we exercise our independent judgment in reviewing the record, we do not decide disputed issues of fact [citation] and our review 'is limited to issues which have been adequately raised and supported in [the appellant's] brief.' [citation]." (*Moore v. City of Lemon Grove* (2015) 237 Cal.App.4th 363, 369 (*Moore*).) The independent standard " 'does not change the substantial evidence standard of review and does not allow us to independently resolve issues of disputed fact already decided by the trial court. If an appellant challenges a finding of fact, we must employ the substantial evidence standard of review. As such, we are not concerned about a conflict in the evidence. "Rather, it is simply whether there is substantial evidence in favor of the respondent. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld. As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing." [Citations.]' " (*City of San Buenaventura v. United Water Conservation District* (2022) 79 Cal.App.5th 110, 119–120.) "We presume that the appealed judgment is correct." (*Moore,* at p. 369.)

B.    *Pongs has Standing to Challenge the 2022A Bonds Resolution*

The City contends it is the bondholders who have standing to challenge the 2022A Bonds Resolution because their contractual rights would be

11

impaired if the 2022A Bonds required the City to violate the rate covenant. Here, because the record does not disclose evidence Pongs is a bondholder, the City argues that Pongs is, in effect, attempting to assert the contractual rights of those third-party bondholders. Pongs responds that he has standing to challenge the 2022A Bonds Resolution because he is, in fact, a bondholder. In support of his argument, Pongs attaches financial records to his reply brief that demonstrate he and Moslenko purchased 2022A Bonds in November 2022.

The financial documents Pongs attaches to his briefing do not appear to be part of the record on appeal. (See Cal. Rules of Court, rule 8.204(d), italics added [a party "may attach copies of exhibits or other materials *in the appellate record . . . ."*].) Pongs does not include a citation to the record where the documents appear, nor has he requested judicial notice of the documents. We may not consider evidence outside of the record on appeal, and we therefore disregard these exhibits and his related argument. (*Singh, supra*, 65 Cal.App.5th at p. 861.)

Nevertheless, Pongs also argues he has standing to challenge the 2022A Bonds Resolution as an "interested party" under section 863. We agree. Under section 863, "any interested party" may pursue a reverse validation claim to determine the validity of a public agency's action. Courts have defined the phrase "any interested party" in this context to mean a person " 'having a direct, and not a merely consequential, interest in the litigation.' " (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1042.) Examples of such interested parties include property owners and taxpayers seeking to challenge redevelopment plans and projects through reverse validation claims. (See *Regus v. City of Baldwin Park* (1977) 70 Cal.App.3d 968, 972; *Card v. Community Redevelopment Agency* (1976) 61

12

Cal.App.3d 570 574, fn. 6.) These cases reasoned that the property owners had a direct financial interest in the outcome of the redevelopment projects, and therefore were interested parties within the meaning of section 863. (*Ibid.*)

Similarly, here, Pongs has a direct interest in the outcome of his challenge to the 2022A Bonds Resolution as a ratepayer and property owner. (See *Wolstoncroft v. County of Yolo* (2021) 68 Cal.App.5th 327, 333 [property owner properly pursued a reverse validation action challenging a public agency's compliance with Proposition 218 in connection with its raise to utility rates].) We do not construe Pongs's claims to be predicated on the potential impairment of the 2022A Bonds bondholders' contractual rights, as the City argues in its briefing on appeal. Rather, as a resident of the City and ratepayer to the DPU, Pongs bases his challenge on the rate increase that he argues will apply to all ratepayers as a result of the 2022A Bonds, and the City's purported failure to abide by Proposition 218 prior to enacting such a raise in rates. Accordingly, we conclude Pongs has standing to pursue the instant reverse validation claim.

C.     *The 2022A Bonds Resolution Did Not Impose or Increase a Fee or Charge Within the Meaning of Proposition 218*

Proposition 218 was "one of a series of voter initiatives restricting the ability of state and local governments to impose taxes and fees." (*Plantier, supra*, 7 Cal.5th at p. 380.) It added article XIII C and article XIII D to the California Constitution and permits only "four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge." (*Howard Jarvis, supra*, 73 Cal.App.4th at p. 682.) Proposition 218 requires "distinct procedural and substantive limitations" when a public agency seeks to impose or increase a property related fee or charge.

13

(*Plantier,* at p. 381.)  Charges for water delivery constitute "property-related service" charges subject to the procedural requirements of Proposition 218 when an increased fee or charge is proposed.  (*City of Palmdale v. Palmdale Water Dist.* (2011) 198 Cal.App.4th 926, 934 (*City of Palmdale*).)

Under article XIII D of the California Constitution, an "[a]gency seeking to impose or increase a property-related fee must hold a hearing and send written notice of the hearing to the owner of each affected parcel.  (Cal. Const. art. XIII D, § 6, subd. (a)(1).)  The notice must specify the amount of the proposed fee, the basis of calculation, and the reason for the fee.  It must note the date, time, and location of the public hearing." (*Plantier, supra*, 7 Cal.5th at p. 381.)  If a majority of parcel owners affected by the fee or charge present a written protest, the agency may not impose the fee or charge. (*Ibid*.)

Here, the trial court found that neither the 2022A Bonds Resolution, nor the official statement for the 2022A Bonds, adopted a rate increase or required the City to adopt a future rate increase that would trigger the procedural requirements of Proposition 218.  The court also found the evidence failed to demonstrate that the debt incurred by the 2022A Bonds would *necessarily* require a future rate increase to comply with the rate covenant set forth in the Master Resolution.  To the extent the City took action in the future to raise rates, the court found that Proposition 218 did not prohibit the City from taking on additional debt, or from increasing fees and charges in the future, so long as it complied with the requirements of Proposition 218.

Following an independent review of the record, we similarly conclude that the 2022A Bonds Resolution did not adopt or require a rate increase subject to Proposition 218.  The text of article XIII D, section 6, requires a

14

public agency to comply with Proposition 218's procedural mandates only in "*imposing* or *increasing* any fee or charge." (Cal. Const., art. XIII D, § 6, subd. (a).) In a related context, this court held that for the purposes of determining whether a tax was "imposed" by the local government, imposed means "enacted." (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 368 [reviewing whether a procedural ordinance was "imposed" within the meaning of article XIII C, § 1].) Applying this definition here, the record is clear that the 2022A Bonds Resolution has not imposed or increased any fee or charge that would trigger the requirements of Proposition 218 simply because it has issued revenue bonds that could result in the accumulation of debt. Pongs cites to no legal authority that suggests Proposition 218 prohibits a public agency from incurring debt, nor have we found any such authority.

The official statement for the 2022A Bonds expressly states that any future rate increase is subject to the approval of the City Council and limited by the constitutional provisions enacted by Proposition 218. Although the official statement contemplated future rate increases, the 2022A Bonds Resolution did not increase any property-related fee or charge. We presume, absent evidence to the contrary, the City will comply with its Proposition 218 obligations prior to any future rate increase. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."]; *Patten v. San Diego County* (1951) 106 Cal.App.2d 467, 470 ["No presumption of irregularity or failure to perform official duty may be indulged against municipal or public officers."].)

Moreover, we reject Pongs's contention that the 2022A Bonds Resolution necessarily required a rate increase to comply with the rate covenant set forth in the Master Resolution. The deputy general manager for

15

the City averred that if the City was at risk of violating the rate covenant, the DPU could "either increase revenues, decrease [o]perations and [m]aintenance costs, decrease debt service, apply surplus revenues, or a combination of the foregoing steps . . . ." Thus, as the trial court found, even assuming that the debt accrued by the 2022A Bonds required the DPU to take future action to comply with the rate covenant, the record does not demonstrate that the DPU would *necessarily* be required to raise rates. Accordingly, we conclude the 2022A Bonds Resolution did not impose or increase a fee or charge within the meaning of Proposition 218.

D.     *The Record Does Not Demonstrate the DPU Authorized Pension Payments in Violation of Proposition 218*

In Pongs's opening brief, he argues "[t]he UAL debts of the City should be paid for outside of the water rates for the water utility, whether from the General Fund or from separate financing." He cites to no legal authority in his opening brief to support his position aside from bullet point descriptions of article XIII D.[6] Although we will not develop Pongs's legal argument for him, we construe his briefing to argue that the 2022A Bonds Resolution improperly allocated water rate revenue to pay for the UAL and POBs related to the pensions of retired DPU employees. We are not persuaded.

Section 6 of article XIII D provides that a property related fee: (1) cannot be charged in excess of the service provided; (2) can only be used for the purpose it was charged; (3) cannot be charged unless that service is actually used by, or immediately available to, the owner of the property in

---

[6]     Pongs attempts to the explain CalPERS actuarial process in his rely brief through paragraphs of unsupported proffers. As previously indicated, we disregard factual contentions that are not supported by citations to the record and legal arguments that are not supported by citations to relevant legal authority. (*Singh, supra*, 65 Cal.App.5th at p. 861.)

question; (4) and may not be imposed for general governmental services. (Cal. Const. art. XIII D, § 6, subds. (b)(1), (2), (4) & (5).)  "The theme of these sections is that fee or charge revenues may not exceed what it costs to provide fee or charge services.  Of course, what it costs to provide such services includes all the required costs of providing service, short-term and long-term, including operation, maintenance, financial, and capital expenditures.  The key is that the revenues derived from the fee or charge are required to provide the service, and may be used only for the service.  In short, the section 6(b) fee or charge must reasonably represent the cost of providing service." (*Jarvis Taxpayers Ass'n v. City of Roseville* (2002) 97 Cal.App.4th 637, 647–648.)

Here, the Master Resolution makes clear that the DPU's operating and maintenance expenses required to provide water to its customers include "any necessary contribution to retirement of [w]ater [s]ystem employees." California law supports this provision of the Master Resolution, as courts have repeatedly concluded that pensions represent " 'an integral portion of the contemplated compensation' for the services rendered by the employee." (*Larson v. Board of Police and Fire Pension Com'rs of City of Long Beach* (1945) 71 Cal.App.2d 60, 64; see also the *Dickey v. Retirement Board of S.F.* (1976) 16 Cal.3d 745, 749.)  Thus, as the trial court found, "[a] public employee's pension constitutes an element of compensation, and a vested contractual right to pension benefits accrues upon acceptance of employment." (*Betts v. Board of Administration of Public Employees' Retirement System* (1978) 21 Cal.3d 859, 863.)

Pongs's argument that the DPU's proportional funding of the UAL and POBs constitutes fees outside the costs of providing water utility services is belied by the record and unsupported by any legal authority.  The City's chief

17

financial officer explained in his declaration that the UAL is the amount that must be funded to pay for promised future pension benefits. It applies not only for past employees, "but represents the earned pension benefits owed to current employees as well." Moreover, the POBs do not represent costs unrelated to the operating and maintenance expenses of the DPU, but rather simply "replaced the [DPU's] obligation to make annual UAL payments with amortized repayments of the principle amount of the POBs."

Accordingly, the record does not demonstrate that the City violated Proposition 218 by using revenue from the 2022A Bonds to finance capital projects for the City's water utility system, including related payments to fund its employees' salaries and the DPU's required contributions to the employees' retirement system. Rather, the record demonstrates that the DPU's pensions obligations are costs required to run the department and provide water utility services to its customers. Thus, we conclude the trial did not err by entering judgment in favor of the City as to Pongs's reverse validation claims and his request for declaratory and injunctive relief.[7]

---

[7] Pongs's argument on appeal related to his request for declaratory and injunctive relief is not cogent. In his reply brief, Pongs states, "it is error not to sever or separately litigate the declaratory relief action." It is unclear the nature of the error that Pongs claims occurred in the trial court related to his action for declaratory and injunctive relief. Regardless, we find no error in the trial court's ruling that Pongs is not entitled to declaratory and injunctive relief for the reasons previously discussed in this opinion.

DISPOSITION

The judgment is affirmed.  The City is entitled to its costs on appeal.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


CASTILLO, J.